Park Hosiery Mills v. Commissioner.
Park Hosiery Mills v. Commissioner
Docket No. 16378.
United States Tax Court
1949 Tax Ct. Memo LEXIS 159; 8 T.C.M. (CCH) 564; T.C.M. (RIA) 49144; June 6, 1949
George E. H. Goodner, Esq., Munsey Bldg., Washington, D.C., for the petitioner. Homer F. Benson, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies for fiscal years ended June 30, as follows: Declared
Excess
Income
Value Excess-
Profits
Tax
Profits Tax
Tax
1941
$211.78
$195.19
$ 385.06
1942
363.23
212.53
572.02
1943
33.88
172.64
2,085.79
1944
21.13
1,900.90 The issues are (1) whether the petitioner is entitled to deductions for depreciation for each year in excess of those allowed by the Commissioner; (2) whether accumulated earnings and profits as of the beginning of each year must be reduced by the amount of income and excess profits taxes for the preceding taxable year *160 in determining equity invested capital for the fiscal years 1943 and 1944; and (3) whether the petitioner is entitled to relief under section 721 of the Code in computing its excess profits tax for the fiscal years 1942 and 1943. Findings of Fact The petitioner was organized in 1939 as a Tennessee corporation. It has been engaged in Knoxville solely in the manufacture and sale of men's seamless hosiery since July 1939. It keeps its books and files its returns upon an accrual basis of accounting, using a fiscal year ending June 30. Its returns for the taxable years were filed with the collector of internal revenue for the district of Tennessee. The petitioner purchased the most modern knitting machinery and attachments at the following costs: Number of
Total
Date Acquired
Machines
Cost
May-July 1939
20
$30,010.88
February 1940
10
14,780.32
June 30, 1941
Attachments
593.39
January 1942
10
22,838.04
June 30, 1943
Attachments
1,836.75
The petitioner operated its plant from 8 to 24 hours per day and from one to seven days per week during the taxable period. The hourly operation of the knitting machinery, without allowance for the time required *161 for making repairs, was as follows during the fiscal years 1940 through 1944: Number
Hours of
of Machines
Operation
Period
in Operation
Per Machine
7/10/39 to 2/17/40
20
1,734
2/18/40 to 6/30/40
30
995
7/ 1/40 to 6/30/41
30
4,104
7/ 1/41 to 1/ 3/42
30
3,984
1/ 4/42 to 6/30/42
40
3,384
7/ 1/42 to 6/30/43
40
7,488
7/ 1/43 to 6/30/44
40
6,732 The attachments were operated at the same rate as the machinery from the dates of acquisition. The machines frequently required minor repairs. They were maintained in very good condition during the taxable period. The record does not show the probable useful life of any of the machinery or attachments on the basis of age, hours of operation, or any other basis. Probable salvage value, if any, is not shown. The petitioner carried furniture and fixtures on its books in the amounts of $346.72, $425.32, $462.62 and $462.62 at the end of the fiscal years 1941 through 1944, respectively. The record does not show the dates of purchase or the probable useful life of any of the furniture or fixtures. The following table shows the deductions for the depreciation of furniture and fixtures and machinery and *162 equipment claimed on the returns for the fiscal years 1940 through 1944, and portions of those deductions disallowed by the Commissioner as excessive: 1940
1941
1942
1943
1944
Amounts deducted by the petitioner for
the depreciation of: Furniture and Fix.
$ 17.33
$ 38.60
$ 44.40
$ 46.26
Machinery and Eq.
$4,462.60
4,508.78
5,680.36
6,823.76
6,917.10
Total
$4,462.60
$4,526.11
$5,718.96
$6,868.16
$6,963.36
Amounts disallowed as excessive by the
Commissioner
$1,508.69
$1,906.32
$2,289.38
$2,321.11 The deductions for depreciation claimed by the petitioner were based upon an annual rate of depreciation of 10 per cent. The allowable deductions determined by the Commissioner are based upon an annual rate of 6 2/3 per cent. The record does not show what were reasonable allowances for the exhaustion, wear and tear and obsolescence of any property used in the business of the petitioner during the fiscal years 1941 through 1944, or that such allowances were in excess of the amounts allowed by the Commissioner. The petitioner used the excess profits credit based on invested capital in computing its excess profits tax for the fiscal *163 years 1943 and 1944. It paid its income and excess profits taxes for the fiscal year 1942 in quarterly installments during the fiscal year 1943. It paid its income and excess profits taxes for the fiscal year 1943 in quarterly installments during the fiscal year 1944. The Commissioner eliminated from the petitioner's accumulated earnings and profits as of the beginning of the taxable year the amount of its income and excess profits tax liability for the preceding taxable year, for the purposes of determining its excess profits credit based on invested capital for the fiscal years 1943 and 1944. The petitioner manufactured a highly competitive line of hosiery during the first two years of its operations. Thereafter it started producing a less competitive higher grade of hosiery. However, the material required for that type of hosiery was scarce and subject to governmental regulation after 1941 and the petitioner was not able to obtain enough material to manufacture the higher grade of hosiery exclusively during the fiscal years 1942 and 1943. The petitioner manufactured hosiery from whatever materials it could obtain during the war. There was a constant demand for its products during *164 the taxable years, and it was able to sell all that it manufactured. The income of the petitioner as shown on its tax returns was as follows for the fiscal years 1940 through 1943: 1940
1941
1942
1943
Net Sales
$57,651.42
$101,871.12
$232,554.16
$310,687.50
Cost of Goods Sold
43,986.49
73,687.59
170,295.37
230,499.35
Gross Profits on Sales
$13,664.93
$ 28,183.53
$ 62,258.79
$ 80,188.15
Other Income
160.63
105.55
731.34
2,854.18
Gross Income
$13,825.56
$ 28,289.08
$ 62,990.13
$ 83,042.33
Deductions
9,638.76
13,519.38
21,823.26
29,010.71
Net Income
$ 4,186.80
$ 14,769.70
$ 41,166.87
$ 54,031.62
The record does not show to what extent the petitioner's gross income or profits for the fiscal years 1942 and 1943 was derived from the manufacture and sale of any particular type of hosiery; that any of its income for those years resulted from research or development of tangible property, patents, formulae or processes or any combination of the foregoing extending over a period of more than 12 months; or that any of its income for those years was attributable to any previous or future taxable year or years. The Commissioner *165 did not allow the petitioner any relief under section 721 in determining its excess profits tax liability for the fiscal years 1942 and 1943. The petitioner received no net abnormal income in either of those years which is attributable to any other taxable year. Opinion MURDOCK, Judge: The record shows the amounts at which the petitioner carried furniture and fixtures on its books but there is no evidence of the date of the purchase of any of the furniture or fixtures or of its probable useful life. The determination of depreciation deductions by the Commissioner must be approved under such circumstances. The cost and the dates of purchase of the machinery and equipment have been proven and are not in dispute. The parties differ as to the rate of depreciation to be applied to the machinery and equipment in order to arrive at a reasonable allowance for depreciation. The petitioner seeks to rely upon the determination of the Commissioner and at the same time prove that it was an error. It reasons that the Commissioner has correctly assumed that the useful life of the machinery and equipment will be 15 years if operated 50 weeks per year, 5 days per week, and 16 hours daily, a total *166 life of 60,000 hours for each machine, but since the machinery and equipment was used for an excessive number of hours during the taxable years, a rate of depreciation equal to the actual hours used over 60,000 should be applied in determining a reasonable allowance for depreciation for each of the taxable years. That contention is made for the first time in its brief and would result in larger deductions for several years than those claimed on the returns. The president of the petitioner testified that the revenue agent and the Commissioner had determined a 15 year life for the machines based upon 16 hours operation 5 days a week for 50 weeks, and he said he would agree that that would be a fair estimate of the useful life of the machines. His qualifications and reasons were not shown. He did not testify as to how, in his opinion, the useful life of the machines would be affected by the hours of operation. He stated, upon cross-examination, that the original machines purchased in 1939 were still being used and were in very good condition at the time of the hearing in November 1948 and he indicated that all of the machines could be operated indefinitely if they were kept in proper *167 repair. The evidence in the case does not justify disturbing the Commissioner's determination of reasonable allowances for depreciation of machinery and equipment for any of the taxable years. Cf. ; Copifyer Lithograph Corporation, 12 T.C. , (5/10/49). The second issue is whether the Commissioner properly eliminated income and excess profits taxes for the preceding year from accumulated earnings and profits as of the beginning of each taxable year in computing the petitioner's equity invested capital for 1943 and 1944. This point is decided for the Commissioner. Atlumor Manufacturing Company, Inc., 12 T.C. , (June 3, 1949). The final issue is whether the petitioner is entitled to relief under section 721 for the years 1942 and 1943. The petitioner is making its claim for this relief for the first time in its petition in this proceeding. That is, the Commissioner has never considered and rejected such a claim in determining the deficiency. The petitioner, in such circumstances, must build its claim step by step, completely, from the very beginning. . The petitioner's arguments are cursory *168 and somewhat elusive, It regards the whole problem as largely one of mathematics. Its contention seems to be that all of its income was within some class described in section 721 (a) (2) (C) and was abnormal for 1942 and 1943 because it exceeded 125 per cent of its average income for the previous taxable years. This Court held in , that "a 'class' is not to consist of income tax net income, net income, net loss, or any combination thereof." The petitioner fails to prove that its income from manufacturing should be regarded as due to any one or more of the activities mentioned in (C). The evidence does not disclose that anything in particular was done to develop any line of merchandise which was sold during the taxable years; that any part of its income for the taxable years resulted from any development which took place in prior years; or that its increased income for the taxable year did not result entirely from the increased demand during the war for goods of the type manufactured by the petitioner, rather than from any development which took place in a prior year. Even if the petitioner had shown that it had some *169 net abnormal income which should be attributed to prior years, nevertheless, it has failed to show any basis for allocating such net abnormal income to prior years. ; ; ; Atlumor Manufacturing Company, Inc., supra. The petitioner has not shown that section 721 applies. Reviewed by Special Division. Decision will be entered for the respondent.